**Opinion issued July 21, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-26-00164-CR

_____

### EX PARTE ROBERT BABIN

---

### On Appeal from the 338th District Court
### Harris County, Texas
### Trial Court Case No. 1942890

---

### MEMORANDUM OPINION

Appellant Robert Babin was arrested for aggravated assault with a deadly weapon following an incident where the State alleges Babin struck his mother with a hammer. After Babin's mother died from her injuries, the State indicted Babin for murder. The trial court set bond at $350,000 and Babin filed a pretrial application for writ of habeas corpus requesting that his bond be reduced to a "reasonable amount." During the hearing on the writ application, Babin requested that his bond

be reduced to $50,000. Babin's family member testified in support of the application. Following the hearing, the trial court denied Babin's requested relief.

Babin appeals from the trial court's denial of his pretrial application for writ of habeas corpus. We affirm.

**Bond Hearing**

The trial court conducted a hearing on Babin's writ application for habeas relief. During the hearing, Babin's second cousin, Jan Lavern Bergeron, testified that Babin is autistic with "anxiety, depression, [] OCD" and "PTSD." Bergeron testified that because Babin is not capable of living independently or managing money, she has a power of attorney over Babin's "finances, care, stuff like that."[1] Bergeron testified that Babin "is very smart" and can read and articulate himself; and that his difficulty in doing simple tasks is due in part to the "[n]eglect, abuse, manipulation, and brainwashing" of Babin's mother—the decedent. Bergeron testified that Babin was dependent on decedent "[f]or everything[:] food, money, housing" and was "being held [as] somewhat prisoner."

Bergeron described the condition of Babin and decedent's residence as "[d]eplorable" with "[n]o electricity, no running water, rats and rodents, 3 to 5 feet of garbage throughout the whole house, and extremely wet because of the busted

---

[1]     Bergeron testified that after Babin's arrest, she commenced probate proceedings to deem him an incapacitated adult.

pipes and a hole in the roof for five years."[2] Bergeron testified that the black marks on the wall were "severe black mold." Bergeron also testified that she saw "a gun . . . with BBs" on Babin's dresser, and guns, a BB gun, and a taser around decedent's bed.

Bergeron testified that Babin is not aggressive and has never gotten in a fight. She testified that he does not smoke cigarettes, drink alcohol, or use drugs. Bergeron testified that Babin has self-control and can refrain from being violent with others.

Bergeron testified that she cannot afford to pay Babin's bond of $350,000, that Babin has never worked, that Babin had about $300 in his checking account, and that decedent's bank account contained only $1,500 upon closure. Bergeron testified that she was able to secure a case manager for Babin at the jail, and that after connecting with the case manager, she was able to facilitate Babin's transfer to a medical wing in the jail where Babin remains housed in the medical area. Bergeron testified that she researched facilities in Texas and was able to locate a locked, state-run facility in Richmond, Texas that would accept Babin as a patient if he were released on bond. She testified that she would be able to transport Babin to the courthouse for court appearances. When asked where Babin would go if his stay at the Richmond facility were time-limited, Bergeron responded that she would need to do "more research." Bergeron testified that she was not capable of monitoring and

---

[2] Defense counsel published photographs of the residence.

caring for Babin and there was no "home" in Houston where Babin could stay.

The State noted that after the alleged incident involving the decedent, Babin messaged a friend telling him he was in trouble and needed help because he had assaulted his mother with a hammer—hitting her a few times in the head and to the side—and she was barely breathing. Babin stated that he had to get rid of the hammer and destroy the evidence before police arrived because he did not want to end up on death row. Referencing Babin's messages, the State argued that Babin "certainly understood that day[,] the importance and the nature of [his actions] and that [what he did] was wrong." The State asserted that the "hearing [wa]s not about punishment mitigation" but rather "about the current looming, potential danger [Babin] is to himself and to the community . . . ." The State concluded that "there [wa]s no bond condition th[e] [c]ourt c[ould] set to cure a potential mental health problem" and "[t]he only feasible option here [wa]s for the [c]ourt to maintain the bond amount where it [was] . . . preventing any further violence against [Babin] and from [Babin]." The State argued that based on Bergeron's testimony, Babin was unable to care for himself or to comply with laws while on bond, and thus, the trial court had no assurance of safety to the community.

Defense counsel argued that Babin, who had always lived in Harris County, was not a flight risk because he did not have any legal papers or the ability to flee. He referenced Babin's financial statement submitted as proof of unemployment.

4

Defense counsel noted Babin's clean criminal and appearance record and lack of "evidence that [] Babin [was] a danger to anyone else in the community" as opposed to decedent's "history of stalking . . . harassment . . . instability and escalation."[3] He argued that while it was "great that two of [Babin's] family members (Bergeron and Bergeron's brother) ha[d] intervened . . . and . . . gotten Harris County Jail to give him medications and . . . to put him in therapy and . . . to move . . . h[im] . . . inside a medical unit so he c[ould] stop being beaten and harassed[,]" Babin "remain[ed] vulnerable" in jail.[4] Defense counsel argued that considering Babin's condition, he should be in a State hospital instead of jail. Defense counsel argued that the set bond was "an instrument of oppression" for Babin, a "disabled, indigent individual" and he requested that it be reduced to $50,000.

The trial court denied Babin's requested relief and this appeal ensued.

## Standard of Review

We review a trial court's decision to grant or deny habeas corpus relief for abuse of discretion. *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013)

---

[3] Defense counsel submitted offense reports relating to the decedent. Bergeron had testified that Babin's sister left and had gotten a "no contact" order against decedent for "abuse [and] neglect"; that Babin and decedent's next-door neighbor was scared to intervene to help Babin because "[decedent] had a case filed against him" and he "feared retaliation from [her]"; and that decedent had threatened Bergeron causing her to "fear[] for [her] life.

[4] Bergeron testified that Babin was placed on suicide watch in jail and was thus moved to a medical facility inside the jail. Bergeron also testified that she believed Babin was interrogated without his attorney's consent.

(stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail will not be disturbed by this Court in the absence of an abuse of discretion") (citation and internal quotation marks omitted); *see also Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Montalvo*, 315 S.W.3d at 593; *see also Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion.") (emphasis in original) (citing TEX. CODE CRIM. PROC. art. 17.15; TEX. CONST. art. 1, §§ 11, 13)).

We will not disturb a trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement."). "To determine whether a trial court abused its discretion [in ruling on a request to reduce bail], we must

decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd); *see Ex parte LaValle*, 705 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (citing *Ex parte Allen*, 619 S.W.3d at 816).

In reviewing a trial court's ruling on a habeas claim, we view the record and evidence in the light most favorable to the court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021) (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)). "The mere fact that a trial [court] may decide a matter within [its] discretionary authority in a different manner than an appellate [court] in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). It is the appellant's burden to establish that the trial court abused its discretion in its bail determination.[5] *Ex parte Rubac*, 611 S.W.2d at 849; *Ex parte*

---

[5] Babin requests that we review the trial court's denial of his application *de novo* pursuant to Article 44.01(a)(7) and (f-1) of the Code of Criminal Procedure. We reject Babin's request. Under Article 44.01(a)(7) and (f-1), the "state" may appeal an order from the trial court that "grants bail, in an amount considered insufficient by the prosecuting attorney," to a defendant charged with murder, and if such an appeal is undertaken, the court of appeals "shall [] conduct a de novo review of all issues presented." TEX. CODE CRIM. PROC. art. 44.01(a)(7)(A)(i), (f-1). By its express terms, Article 44.01(a)(7) and (f-1) apply to an appeal by the state only. And even if it were applicable to a defendant, the referenced provisions are effective for offenses committed on or after September 1, 2025. *Id*. The incident resulting in

*McManus*, 618 S.W.3d 404, 407 (Tex. App.—Amarillo 2021, no pet.) ("In a proceeding seeking a reduction in the amount of pretrial bail, the accused bears the burden of proof to show that the bail is excessive."); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd) ("The burden is on the accused to prove that bail is excessive.").

## Applicable Law

The United States and Texas Constitutions protect the right to be free from excessive bail. U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 11. The primary purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston 14th Dist.] 2016, no pet.). "Determining the appropriate bail amount is a balancing act between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial." *Ex parte Cardenas*, 557 S.W.3d 722, 730 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (citation and internal quotation marks omitted).

To determine whether the trial court abused its discretion in denying Babin's application for writ of habeas corpus requesting that his bond be reduced, we apply

---

Babin's charges predates this effective date. Babin was originally charged with aggravated assault, and when the decedent died from her injuries on June 19, 2025, the State upgraded its charge and indicted Babin for murder. The indictment alleges that Babin murdered the decedent on or about June 11, 2025. Article 44.01(a)(7) and (f-1) are thus not applicable.

8

the factors enumerated in Article 17.15 of the Code of Criminal Procedure. *See Ex parte Perez*, Nos. 02-10-00450-CR, 02-10-00451-CR, 2011 WL 255292, at *1–4 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (considering Article 17.15 factors when defendant requested reduction in bail); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (same); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication) (same).

Article 17.15 instructs trial courts to consider several factors in setting a defendant's amount of bail:

1. The bail and any conditions shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. art. 17.15. In addition, trial courts may also consider:

1. the accused's work record;
2. the accused's family and community ties;
3. the accused's length of residency;
4. the accused's prior criminal record;
5. the accused's conformity with previous bond conditions;
6. the existence of other outstanding bonds, if any; and
7. aggravating circumstances alleged to have been involved in the charged offense.

*Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d at 849–50)).

We review the same bail criteria on appeal. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, 2015 WL 5453313, at *2 (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. I, §§ 11, 13). We determine whether a bail amount is reasonable "on a case-by-case basis, weighing factors unique to each defendant and each offense." *Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Beard*, 92 S.W.3d at 571 (same).

**Discussion**

We now review the relevant bail factors to ensure the trial court did not abuse its discretion.

**A.    Sufficiently High Bail**

We first consider whether the bail is "sufficient to give reasonable assurance that the undertaking will be complied with." TEX. CODE CRIM. PROC. art. 17.15. The $350,000 bail amount in this case was sufficient to give reasonable assurance that Babin will appear in court.

**B.    Whether Bail is Oppressive and the Ability to Pay It**

The second factor, the requirement that bail not be used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related. We thus consider them together.

Babin argued in his application for writ of habeas corpus that his bond amount was "excessive" and in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and Articles 1.09 and 17.15 of the Texas Code of Criminal Procedure. Babin also references Article 1, Section 11 of the Texas Constitution, and Article 17.028(b) of the Texas Code of Criminal Procedure. Similarly, on appeal, he argues that a bond of $50,000 would be "reasonable in this case." During the hearing, Bergeron testified that she could not pay $350,000; that Babin only had about $300; and that she recovered only $1,500 from decedent's account.

"The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail

excessive." *Ex parte Tomlinson*, No. 14-02-00784-CR, 2002 WL 31008642, at *2 (Tex. App.—Houston [14th Dist.] Sept. 5, 2002, no pet.) (mem. op., not designated for publication); *see Ex parte Bogia*, 56 S.W.3d 835, 837 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("The accused's ability or inability to make bond is relevant, but not controlling."). "If the ability to make bond in a specified amount controlled, the role of the trial court in setting bond would be unnecessary and the accused would be able to set his own bond." *Ex parte Tomlinson*, 2002 WL 31008642, at *2.

"Bail set in a particular amount becomes oppressive when it is based on the assumption that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated." *Ex parte Moreno*, No. 01-20-00312-CR, 2021 WL 4733239, at *9 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.); *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that where bail amount was set "solely to prevent [defendant] from getting out of jail[,]" "bail [was] being used as an instrument of oppression")). We thus consider whether the record reflects the trial court made its decision regarding bail "for the purpose of forcing [Babin] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

During the hearing on Babin's application, the defense submitted multiple

12

documents as exhibits including a financial affidavit, which the trial court admitted into evidence without objection. The affidavit indicates that Babin is unemployed and has no income or assets. In his application, Babin also states that his "family has worked to secure funding to post [the] bond, but has been unable to reach the high bond amount." The record is silent as to what efforts his family undertook to furnish bail in the amount set by the court. Bergeron testified that she has worked for Amazon for the past eight years, but there is no testimony as to her or her brother's income, savings, or assets—only her testimony that she could not post Babin's $350,000 bond.[6] Bergeron also did not indicate who, if anyone, she asked for assistance in raising bail money, and whether she contacted a bondsman on Babin's behalf in an attempt to secure bail. *See Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted.") (citation omitted); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (affirming denial of writ requesting reduction in bail amount and stating appellant did not "explain what efforts, if any, were made to furnish the

---

[6]     Bergeron testified that her brother, Jock Bergeron, lives in Seattle and frequently communicates with Babin.

13

bond") (quoting citation omitted).

In his appellate brief, Babin cites *Ex parte Mazuera* for support, but in that case, unlike here, the State agreed to appellant's bail reduction request. No. 01-21-00612-CR, 2022 WL 1110989, at *5 (Tex. App.—Houston [1st Dist.] Apr. 14, 2022, no pet.) (mem. op., not designated for publication). Babin also cites four cases for the proposition that a bail reduction to $50,000 would be "reasonable in this case." However, all four cases are over thirty years old, distinguishable from the instant case, and do not provide useful comparisons.[7] *See Ex parte Beard*, 92 S.W.3d at 571 (holding that "[c]ase law is of relatively little value in addressing the ultimate question of the appropriate amount of bail" because bail "cases are so individualized that generalization from results reached in others is difficult").

Even assuming the trial court credited Babin's application and Bergeron's contention that she could not pay the bail amount, that would not automatically establish the bond amount was excessive. *See Ex parte Bogia*, 56 S.W.3d at 837 (noting that inability to make bond, while relevant, is not controlling) (citing *Ex*

---

[7] *See Ex parte Kelly*, No. 14-22-00813-CR, 2023 WL 5217721, at *3 (Tex. App.—Houston [14th Dist.] Aug. 15, 2023, no pet.) (mem. op., not designated for publication) (affirming $1,000,000 bond for murder); *compare Ex parte Ivey*, 594 S.W.2d 98 (Tex. Crim. App. 1980) (not a murder case); *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977) (little evidence of appellant's guilt; appellant, a getaway driver, denied his guilt); *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) (circumstances of offenses not developed at habeas hearing); *Ex parte Plumb*, 595 S.W.2d 544, 545 (Tex. Crim. App. 1980) (non-violent drug offense).

*parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)). When considering whether a particular bail amount is reasonable, Article 17.15 requires consideration of a defendant's ability to make bail, or in this case, Bergeron on Babin's behalf. *Ex parte Martinez*, 2018 WL 1958016, at *3. But an "inability to make bail, even to the point of indigence, does not control over the other factors." *Id.* (quoting *Ex parte Brossett*, 524 S.W.3d 273, 276 (Tex. App.—Waco 2016, pet. ref'd)). "The ability to make bail shall be considered, and proof may be taken on this point" as one of many factors to be considered by the trial court. *See* TEX. CODE CRIM. PROC. art. 17.15(a)(4); *see also Ex parte Martinez*, 2018 WL 1958016, at *3 (holding that trial court did not abuse discretion in denying request to reduce bail despite testimony that appellant could not make amount of bail, and in taking into consideration other factors in affirming). As the Court of Criminal Appeals has explained, the Legislature, in placing "a mandatory duty" on trial courts to consider the safety of the community when fixing bail, "requires trial courts to consider a fact that is not related to the amount the defendant can afford to pay." *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation omitted).

Based on the record evidence before the trial court, we cannot conclude the trial court set the amount of bail for the express purpose of keeping Babin incarcerated or as a means of oppression. *Ex parte Grant*, No. 01-23-00889-CR,

15

2024 WL 924433, at *4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (holding that "nothing in our record shows that the trial court intentionally set a high bail amount to keep [appellant] incarcerated"); *Ex parte Moreno*, 2021 WL 4733239, at *5, 9, 13 (affirming trial court's denial to lower bail from $1,000,000 in capital murder case despite appellant's arguing she could not afford bail because she was indigent); *cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (holding this factor weighed against trial court's decision where trial court stated, "I'd rather see [appellant] in jail than to see someone's life taken").

Because there is no indication that the trial court used bail as an instrument of oppression, the second and fourth factors do not weigh in favor of bond reduction.

## C.    The Nature of the Offense

The third factor contemplates "[t]he nature of the offense and the circumstances under which [it] was committed." TEX. CODE CRIM. PROC. art. 17.15(a)(3). The nature of the offense and length of the possible sentence are key considerations in determining the reasonableness of bail. *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Nimnicht*, 457 S.W.3d at 67 ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence.").

16

Babin is charged with murder, a first-degree felony, and he faces a punishment range of five to ninety-nine years' confinement or life imprisonment. *See* TEX. PENAL CODE §§ 19.02, 12.32(a). This range of punishment, should Babin be found guilty, weighs in favor of the trial court's ruling. *See In re Hulin*, 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense."); *Ex parte Bartolo*, 2022 WL 17254957, at *5 ("The serious and violent nature of the first-degree felony offense of murder with which appellant is charged and the potential sentence appellant faces related to charged-felony offense weigh against a determination that the bail amount sent [*sic*] by the trial court was excessive."). The indictment indicates that Babin used or exhibited a deadly weapon during the commission of the offense, and the trial court heard evidence that Babin tried to hide or destroy evidence of the crime. The serious and violent nature of the offense, the use of a deadly weapon, and the potential for a lengthy sentence all weigh in favor of the trial court's ruling.

## D. Safety of the Community

In making its bond determination, the trial court also had to consider the future safety of the community. Babin has been charged with murder for the death of his mother.

Bergeron testified that Babin suffers from "anxiety, depression, [] OCD" and "PTSD" and although she testified she was able to secure a facility in Richmond, Texas that could accept Babin as a patient, she did not have any alternative arrangements for him should the facility not be able to house him long-term. She testified that she is not capable of monitoring and caring for Babin, and there is no "home" in Houston where Babin can stay.

The State alleges that Babin struck his mother with a hammer causing serious physical injury resulting in her death. During the hearing, the State informed the court that Babin sent messages to a friend after the incident, stating that he repeatedly hit his mother in the head and side with a hammer, that she was barely breathing, and that he had to get rid of the hammer and destroy the evidence before police arrived because he did not want to end up on death row. The State argued that Babin "certainly understood that day[,] the importance and the nature of [his actions] and that [what he did] was wrong." The State further argued that based on Bergeron's testimony, Babin was unable to care for himself or to comply with laws while on bond, and that Bergeron was not able to confirm how long Babin would be allowed to stay in the state facility pending trial, and she had prepared no alternative plan. Thus, the State argued, the trial court had no assurance of safety to the community.

Based on the nature of the offense, and the fact Bergeron testified she had no alternative plan and could not house Babin if the state facility was not able to house

18

Babin long-term, the trial court reasonably could have concluded there was a lack of assurance regarding the future safety of the community. This factor supports the trial court's bond decision. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication) ("Considering the seriousness and violence of the charged offense [of burglary of habitation with intent to commit murder], the trial court could have concluded appellant posed a threat to the community" and noting that "[t]his factor weighs against a determination the amount of bail was excessive").

### E. Other Factors

Trial courts may also consider factors such as the accused's family and community ties. The record reflects that Babin's medical condition requires him to be in a secure environment with full time monitoring and supervision. Babin argues that the "plan for [his] release was more than adequate . . . ." However, while Bergeron testified that she had arranged for Babin to be placed in a state facility, she was not aware of alternative facilities should Babin not be able to stay at the chosen facility long-term. Bergeron further testified that Babin would not be able to stay with her as she does not have the capacity to monitor him full-time. This factor does not favor a bond reduction. *Compare Ex parte Estrada*, 640 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (several factors "favor[ed] a lower,

19

more achievable bail amount[,]" such as appellant planned to reside with family upon release from custody).

Reviewing the record and evidence in the light most favorable to the court's ruling, as we must, and based on our analysis of the Article 17.15 factors and supplemental factors, we find the trial court weighed the relevant factors and properly exercised its discretion in denying Babin's request to lower his bond. We cannot conclude that the trial court acted without reference to any guiding rules or principles or that its ruling was arbitrary or unreasonable. *See Ex parte Gomez*, 624 S.W.3d at 576 (stating appellate court reviews evidence in light most favorable to trial court's ruling); *also Montgomery*, 810 S.W.2d at 380 (stating that abuse of discretion is not demonstrated by mere fact trial court decides matter within its discretion differently than appellate court would in similar circumstance).

## Conclusion

Based on the record before this Court, we cannot conclude the trial court abused its discretion in denying Babin's application for writ of habeas corpus. We thus affirm the trial court's judgment denying Babin's habeas application for bond reduction.

> Veronica Rivas-Molloy
> Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).